## NATIONAL BISCUIT CO. v. LITZKY.

Circuit Court of Appeals, Sixth Circuit. December 9, 1927.

No. 4853.

1. **Master and servant** ⬅️284(2)—**Notice to employee of discharge before injury and authority to give notice held for jury.**

In action by discharged employee for injuries in elevator fall, in which defendant contended that state Workmen's Compensation Act

(Pub. Acts Mich. Ex. Sess. 1912, No. 10) was applicable, evidence, though conflicting, *held* sufficient to take to jury question whether notification of discharge was in fact given, and whether forewoman delivering notification was authorized to discharge others.

**2. Appeal and error ☞1001(1)—Verdict based on evidence sufficient to take case to jury held conclusive.**

Where evidence, though conflicting, was sufficient to take to jury question whether notification of discharge was given employee, employer is concluded by verdict on such issue, since it was for jury to pass on weight and sufficiency of evidence.

**3. Appeal and error ☞216(1)—Party cannot complain of instructions or failure to charge relative to issue, submission of which was not requested.**

In personal injury action by discharged employee, in which employer did not request submission of question of forewoman's authority to discharge plaintiff, employer cannot on appeal object to failure of court to charge on such subject, or to sufficiency or propriety of instructions given.

**4. Master and servant ☞375(1)—Injury to discharged employee while leaving premises held not within Michigan Workmen's Compensation Act (Comp. Laws Mich. 1915, § 5426).**

Personal injury action by discharged employee, injured in elevator fall in leaving building after discharge, *held* not barred by Workmen's Compensation Act Mich. (Pub. Acts Ex. Sess. 1912, No. 10) pt. 1, § 4 (Comp. Laws 1915, § 5426), since injury did not "arise from, out of, and in course of employment," and compensation was therefore not recoverable under state Compensation Act.

**5. Master and servant ☞375(1)—Injury to discharged employee while leaving building held not to "arise from, out of, and in course of employment" (Workmen's Compensation Act Mich.).**

Injury to discharged employee in elevator fall held not to "arise from, out of, and in course of employment," within Workmen's Compensation Act Mich. (Pub. Acts Ex. Sess. 1912, No. 10), where such employee ate lunch in employees' lunchroom after discharge, before starting to leave building.

**6. Master and servant ☞88(7)—Employer must not injure discharged employee through affirmative acts of negligence.**

Even if discharged employee, by going to employees' lunchroom before leaving employer's premises, became licensee, duty rested on employer not to injure her through affirmative acts of negligence, such as overloading of elevator.

**7. Negligence ☞134(2)—Negligence may be established by circumstantial evidence.**

Regardless of doctrine of res ipsa loquitur, negligence may be established by circumstantial evidence, and where circumstances are such as to take case out of realm of conjecture, and within field of legitimate inference from established facts, prima facie case is made.

**8. Carriers ☞320(23)—Whether elevator fall, causing discharged employee's injury, was due to overloading of cage, held for jury.**

In action by discharged employee for injuries received in elevator fall, while leaving employer's premises, evidence *held* sufficient to take to jury question whether accident was due to overloading of elevator cage.

**9. Appeal and error ☞223—Contention that judgment is not responsive to verdict cannot be raised for first time on appeal.**

Contention that judgment is not responsive to verdict will not be considered by Circuit Court of Appeals, when raised for first time on appeal.

**10. Appeal and error ☞1170(12)—Judgment in trespass on the case will not be set aside, as not responsive to verdict as in assumpsit, nonprejudicial clerical error being obvious (Jud. Code, § 269, as amended by Act Feb. 26, 1919 [28 USCA § 391]).**

In action of trespass on the case, in which verdict appearing of record was one as if in action in assumpsit, judgment will not be set aside, as not responsive to verdict, verdict being manifestly result of clerical error, not affecting substantial rights of defendant, bringing case within provisions of Judicial Code, § 269, as amended by Act Feb. 26, 1919 (28 USCA § 391 [Comp. St. § 1246]).

In Error to the District Court of the United States for the Eastern District of Michigan; Arthur J. Tuttle, Judge.

Action by Rose Litzky, by David Shangle, next friend, against the National Biscuit Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Lewis W. McCandless, of Chicago, Ill. (Stevenson, Butzel, Eaman & Long, of Detroit, Mich., on the brief), for plaintiff in error.

Frank H. Dohany, of Detroit, Mich. (Dohany & Dohany, of Detroit, Mich., on the brief), for defendant in error.

Before DENISON and MOORMAN, Circuit Judges, and HICKENLOOPER, District Judge.

HICKENLOOPER, District Judge. On February 15, 1925, the defendant in error, plaintiff below and hereinafter referred to as the plaintiff, was employed as "general help" in the factory of the plaintiff in error, hereinafter referred to as the defendant. Plaintiff testified that shortly before 11:30 a. m. on that day she was told by the head forewoman of her floor that her work had not been satisfactory and that she could go, and need not return; that she was discharged. Thereupon, it appears from the evidence, plaintiff went to the lunchroom provided for employees, on the seventh floor of the building, ate her lunch, and took the elevator to

descend, as she testifies, to the cloakroom on the second floor. As the elevator started to descend, with at least a capacity load, the electric controls failed to function, and the cab fell to the basement, but at only its ordinary speed or a little faster, When it struck the bottom of the pit, the plaintiff was jarred and thrown to the floor, and suffered physical injury and nervous shock, for which she subsequently recovered a verdict.

[1, 2] It is conceded that the defendant was lawfully operating under the Workmen's Compensation Act of the State of Michigan (Pub. Acts Ex. Sess. 1912, No. 10), and error is assigned to the refusal of the court to give special instructions 1, 2, and 3 requested by the defendant; due exception to such refusal having been taken. The first of these requests assumes that as a matter of law the plaintiff was not discharged; the second, that if discharged, or if the defendant is foreclosed upon this issue by the verdict, the relationship of employer and employee did not terminate, so far as rights and liabilities in connection with personal injuries were concerned, until the plaintiff had had a reasonable time to leave the premises which had not yet expired. Both assume that, if this relationship of employer and employee existed, either through lack of discharge or by extension, then, also, as a matter of law, the action could not be maintained by reason of the Michigan Workmen's Compensation Act.

The first request was properly refused. The court submitted the question of discharge squarely to the jury under instructions to which no exception appears of record. While the evidence is conflicting as to whether notification of discharge was in fact given, there was substantial evidence of such notification. It was for the jury to pass upon the weight and sufficiency of this evidence, and the defendant is concluded by the verdict upon the issue of notification. But, it is contended, even though so concluded by the verdict upon the question of notification, yet the record is wholly devoid of any evidence that the forewoman delivering the notification was authorized to so discharge others, and that it was thus the duty of the court to declare a failure of proof upon the question of discharge and to give the instruction. The evidence does disclose, however, that Miss Sintz, the head forewoman upon the floor where plaintiff worked, and who was identified by the plaintiff as she who issued the discharge, customarily delivered all notices of discharge; the foreman himself not participating in the actual notification. Whether or not this authority was affirmatively vested in the head forewoman by company rule, regulation, or

by-law, it is manifest from the evidence that it was customarily exercised by her, and was well within the scope of her apparent authority.

[3] We are of the opinion that this evidence, supported by the positive testimony of the plaintiff that she was thus notified, raised an issue of fact to be submitted to the jury, and that the court cannot say as a matter of law that there was no substantial evidence of authority. The question of notification was apparently treated by court and counsel as alone controlling. No request appears of record to submit to the jury, or otherwise raise, this question of authority at the trial. Under these circumstances the defendant cannot now object to a failure of the court to charge upon this subject, or to the sufficiency or propriety of the instructions given.

[4] The second request, assuming a continuation of the relationship of master and servant after discharge and until the servant has had a reasonable opportunity to leave the premises, leads to a consideration of the Michigan Workmen's Compensation Act. Section 4 of part 1 of this act, being section 5426 of the Compiled Laws of Michigan, provides that "any employer who has elected, with the approval of the Industrial Accident Board hereinafter created, * * * shall not be subject * * * to any other liability whatsoever, save as herein provided, for the death of or personal injury to any employee, *for which death or injury compensation is recoverable under this act."* (Italics ours.)

Under the provisions of this act the right of the plaintiff to maintain an action is defeated only where compensation is recoverable, and compensation is recoverable only where the injury arises out of and in the course of the employment. Whether, therefore, such rights of the employee and obligations of the employer as arise from the relationship of master and servant do not terminate at the moment of discharge, but exist for a reasonable time thereafter to permit the employee to leave the premises, is immaterial, if, under the Michigan law, the accident here, happening after discharge, is to be held not to arise from and in the course of the employment.

While the courts of various states have differed as to what accidents may properly be considered as arising out of and in the course of the employment, the Michigan cases cited in the note [1] show continuous adherence

---

[1] NOTE.—Moronen v. McDonnell, 177 Mich. 691, 143 N. W. 8 (injured during noon hour); Spooner v. Detroit Saturday Night Co., 187 Mich. 125, 153 N. W. 657, L. R. A. 1916A, 17

to the doctrine that the injury must have proximate causal connection with and be the direct result of the performance by the employee of some duty of the employment, and we are of the opinion that attendance at the restaurant of the defendant after discharge cannot be said to have so close a causal connection with or to arise from the pre-existing employment as to bring the present case within the class in which compensation would be allowed under the Michigan act. Whether or not the doctrines of a safe place in which to work, assumed risk, and fellow servant would be applicable under such circumstances we need not inquire. No such issues were raised, no request was made to charge in respect thereto, and no exception appears of record to the charge as given.

[5] The instant case differs from those involving only the existence of the relationship of master and servant, while coming to or going from work, or during the luncheon period (cf. Riley v. Cudahy Packing Co., 82 Neb. 319, 117 N. W. 765, and notes in 23 L. R. A. (N. S.) 954 and 960), and is more closely analogous to those cases in which the servant has stepped aside from the business of the master to do an act which is not a part of that business (cf. Ballman v. D'Arcy Spring Co., 221 Mich. 582, 192 N. W. 596; Russell v. Oregon Short Line R. Co., 155 F. 22 [C. C. A. 9]; St. L. S. W. Ry. Co. v. Harvey, 144 F. 806 [C. C. A. 8]). Certainly, after discharge and while not engaged in leaving the premises directly from work, the injury cannot be said to arise from, out of and in the course of the employment. The

(operating elevator for other employees); Hopkins v. Michigan Sugar Co., 184 Mich. 87, 150 N. W. 325, L. R. A. 1916A, 310 (injured while returning from plant in another city to residence); Tarpper v. Weston-Mott Co., 200 Mich. 275, 166 N. W. 857, L. R. A. 1918E, 507 (injured during working hours by independent act of another employee, not connected with service to master); Buvia v. Oscar Daniels Co., 203 Mich. 73, 168 N. W. 1006, 7 A. L. R. 1301 (idly waiting for opportunity to move boat when injured by explosion on dock nearby); Guastelo v. M. C. R. R., 194 Mich. 382, 160 N. W. 484, L. R. A. 1917D, 69 (returning to sleeping quarters over property of defendant after delay of half an hour after quitting time); Ballman v. D'Arcy Spring Co., 221 Mich. 582, 192 N. W. 596 (killed while on errand for foreman); Bischoff v. Am. Car & Fdy. Co., 190 Mich. 229, 157 N. W. 34 (crane operator going to point out defect to mechanic); Klawinski v. L. S. & M. S. Ry., 185 Mich. 643, 152 N. W. 213, L. R. A. 1916A, 342 (death by lightning while section laborer in barn seeking refuge from storm); Ryan v. Port Huron, 234 Mich. 648, 209 N. W. 101 (bitten by dog while seeking refuge from storm); Thier v. Widdifield, 210 Mich. 355, 178 N. W. 16 (struck by lightning while standing in doorway of employer's barn during storm).

plaintiff's right of action is therefore not defeated by the Compensation Act, and it is unnecessary to determine whether, as to other issues and questions, the relationship of master and servant continues for a reasonable time after discharge. The second request was properly refused.

[6] The third request for peremptory instruction is based upon the assumption that, in going to the company lunchroom, plaintiff became a mere licensee, as distinguished from one invited or there for the benefit of the defendant, and that as such the evidence disclosed no breach of the duty which is owing to such a licensee. Having worked for the first half of the day, and having been discharged at the beginning of the luncheon period, by being told that she "could go and need not come back," we are not prepared to hold that there was any duty placed upon the plaintiff to leave before she had had her luncheon, or that she attended the lunchroom without right and in violation of any company rule or order. But, assuming the discharge of the plaintiff, whether she attended the lunchroom as of right, as a licensee with the tacit consent of the employer, or as a bare licensee, the duty rested upon the defendant not to injure her through affirmative acts of negligence. This leads to a consideration of the fourth, fifth, sixth, eleventh and twelfth requests for peremptory instruction, which are all based upon the assumption that the record is devoid of any evidence of such affirmative negligence.

[7, 8] Regardless of the doctrine of res ipsa loquitur, negligence may be established by circumstantial evidence and where the circumstances are such as to take the case out of the realm of conjecture and within the field of legitimate inference from established facts, a prima facie case is made. See Burghardt v. Detroit United Ry., 206 Mich. 545, 173 N. W. 360, 5 A. L. R. 1333. Upon these principles there was sufficient evidence that the accident was due to overloading of the elevator cage to take the case to the jury.

The elevator was one of the electrically operated so-called friction type, in which the supporting cables passed over U-shaped grooves or sheaths in a drum containing magnetically applied brakes, and to which the motor was mechanically connected. Thence the supporting cables passed over another drum or idler to connection with the counterweights. There is evidence that these counterweights equaled the weight of the cage plus one-third its capacity. Therefore, where the load exceeds one-third of the capacity, the brake and motor being connected with the drum, only the friction of the cables in the

U-shaped grooves or sheaths prevents the cage from falling. It is also obvious that, where the car is overloaded, there is always danger of this slipping or "skidding" of the cables in the grooves, and that this is more probable with the U-type groove than with the V-type, which was not there in use.

It is in evidence that this particular elevator fell in a similar manner when overloaded in the previous October. Then serious results were avoided only by the operation of a safety device, which functioned after the elevator had attained a fixed excess of speed, which speed was evidently not attained in the later accident. The rated capacity of the elevator in question was given as 33 persons, and, while most of the witnesses showed marked ignorance of the number carried, the operator of the elevator testified that it could carry 50 passengers, "and more, too," and that he would say that he had at least 35 on board. The accident in the previous October at least warned the defendant of the danger to be anticipated from overloading, and, while the use of the U-type groove is not claimed to be negligent, the increased tendency of the cables to slip in such grooves but emphasized the necessity of care in loading after such notice.

Considering the previous accident and the warning which it gave, the use of U-type grooves or sheaths upon the drum, and the testimony of the experts that this was the only way in which the accident could have happened, and further in view of the affirmative evidence that all mechanical parts of the elevator were in good condition, it is not only a legitimate inference, but almost an inevitable conclusion, that the accident in this case was caused by the slipping of the cables in the grooves, due to overloading. It is this overloading of the elevator which the plaintiff avers was the cause of the accident, and which it is claimed constituted the affirmative negligence complained of. In our opinion the case was properly submitted to the jury upon the issue whether the defendant exercised reasonable care in so closely approximating, if not exceeding, the rated capacity. [9, 10] The only other contention urged is that the verdict was insufficient to support the judgment. The plaintiff's action was one of trespass on the case, while the verdict appearing of record is one as if in action in assumpsit. Judgment was entered upon the verdict on the day the verdict was returned, and in the judgment entry it is recited that such verdict was in favor of the plaintiff for the sum of $6,864. No exception to the judgment appears of record, nor

is any apparent irregularity in the verdict made ground for setting aside such verdict in the motion for a new trial, or assigned as error here. Cf. Detroit United Ry. v. Weintrobe, 259 F. 68 (C. C. A. 6). The contention that the judgment is not responsive to the verdict is now raised for the first time. Not only could we not now consider the question for this reason, but the record verdict is so manifestly the result of clerical error not affecting any substantial right of the defendant as to come squarely within the provisions of the Act of February 26, 1919, being section 269 of the Judicial Code (28 USCA § 391 [Comp. St. § 1246]). Carson v. Jackson, 281 F. 411, 416, 52 App. D. C. 51; Simpson v. U. S., 289 F. 188 (C. C. A. 9).

No error appearing of record affecting the substantial rights of the defendant, the judgment of the court below is affirmed.